**ELLIOTT, Trustee, Plaintiff, v. HINKLE, Extrx. et.**

Probate Court, Butler County.

No. 6986.

## OPINION

By WALSH. J.

This matter came on for hearing upon a petition of the Trustee wherein he prays the judgment and direction of the Court in regard to the true construction of the provisions of the Will of Louis Sebald, deceased, and as to the duties of said Trustee in the premises, and a determination of those persons who constitute the present beneficiaries of said Trust and the proportions to which each are entitled to share in the Trust income.

The Court does find that there has been a proper service upon all parties interested, either by way of waiver, representation by counsel, or legal publication. That matter now being properly before the Court, the Court does have authority and jurisdiction to proceed and determine the issues herein.

Louis Sebald, a resident of Middletown, Butler County, Ohio, died testate, on the 26th day of November, 1914. His Will, which was duly probated December 2, 1914, and upon which Letters of Executorship were issued to Elsie Sebald and Carrie Hinkle, reads as follows:

"IN THE NAME OF THE BENEVOLENT FATHER OF ALL:

"I, Louis Sebald, of Middletown, Butler County, Ohio, being of full age, of sound and disposing mind and memory and under no restraint, do hereby make, publish and declare this as and for my last Will and Testament, hereby revoking and declaring null and void, all other Wills and Testaments by me made heretofore.

"ITEM FIRST. It is my will, and I hereby direct, that all my just debts, expenses of my last illness and funeral expenses, be first paid out of my estate as soon after my decease as may be found convenient by my Executrixes, hereinafter named.

"ITEM SECOND. I hereby give, devise and bequeath Three Thousand Dollars ($3,000.00) of Irrigation Bonds, to my four (4) children, Carrie Hinkle, Elsie Sebald, Harry Sebald and Walter Sebald.

"ITEM THIRD. All of my household furniture to be divided among my two (2) Daughters.

"ITEM FOURTH: I hereby direct that my Executrixes, hereinafter named, shall sell, at either Public or Private sale, as to them may seem best, all unimproved lots owned by me in the City of Middletown, Ohio and lots I own at Florence, Alabama, and to make, execute and deliver unto the purchaser or purchasers, a good and sufficient deed for the same; and, in order to make such sale, said Executrixes are authorized to subdivide or further subdivide any or all of said lots, and to employ an Auctioneer or Agent, to assist them in the making of such sales; the proceeds of such sale to be divided in the manner hereinafter stated.

"ITEM FIFTH. All of my improved real estate, being the business houses and flat buildings fronting on Third Street, in Middletown, Ohio, and the two (2) residences which I own, fronting on Broad Street, in

the City of Middletown, is hereby given, devised and bequeathed unto my Daughter, Elsie Sebald, as Trustee, to have and to hold the same, for the uses and benefits, as follows:

"A. To rent all of said real estate, to collect the proceeds thereof, pay all of charges for taxes and assessments, keep the improvements thereon insured against loss by fire or other unavoidable casualty; to make all necessary repairs or improvements on said buildings and to divide the remainder of such proceeds equally among my said four (4) children, namely—Harry Sebald, Walter Sebald, Carrie Hinkle and Elsie Sebald; such division to be made each three (3) months, or oftener, if she so desires.

"B. My said Trustee shall have and hold said real estate as such Trustee and for the Purposes above mentioned, for the life of all of my children; and in case any of said children shall die during the life of any of my children, the proportion of such income, rents, issues and profits, that may be payable hereunder, to such child so deceased, shall be paid to the child, or children, of such deceased child, during the life of any of my children.

"C. Upon the death of all of my children, such Real Estate is hereby given, devised and bequeathed unto the child or children of my children, or their legal representatives.

"ITEM SIXTH. All the residue of my Estate, including all of the proceeds of the sale of unimproved lots, I do hereby give, devise and bequeath unto my four (4) children, to wit; Elsie Sebald, Carrie Hinkle, Walter Sebald and Harry Sebald, each to have one-fourth thereof; but in such distribution, my Son, Harry Sebald, shall account for an advancement to him amounting to the sum of $1,106.37; and my Son Walter Sebald, shall account as an advancement to him of the sum of $106.37.

"ITEM SEVENTH. I do hereby further direct that the Trustee of the said real estate herein appointed to collect the rents, incomes and profits and to look after the real estate devised to such Trustee, shall be paid a reasonable compensation, not to exceed three percent. (3%) of the amount of rents, incomes and profits collected for the use of such real estate.

"ITEM EIGHTH. In case of the death of my said Trustee or her removal from the City of Middletown, the Probate Court of Butler County, Ohio, is hereby requested to appoint any other of my children, resident of the City of Middletown, as such Trustee, with similar powers as is herein granted to the Trustee herein appointed; and, in case none of my children reside in the City of Middletown upon the death of such Trustee or her successor, and any of my children are still living, the Probate Court of Butler County, Ohio, is hereby authorized and empowered to appoint some judicious person, resident of the City of Middletown, to act as such Trustee, with similar powers and similar limitations as to compensation as is herein stated for the Trustee herein appointed.

"ITEM NINTH. I do further direct that no bond be required of my daughter, Elsie Sebald, as such Trustee, during her incumbency as such.

"ITEM TENTH. I do hereby nominate and appoint my two (2)

daughters, Elsie Sebald and Carrie Hinkle, as the Executors of this, my last Will and Testament, and I do hereby direct that no bond be required of them for the faithful performance of their duties; and I do further direct that no appraisement be required to be made of my estate.

"ITEM ELEVENTH. It being my intention to provide an income for the support of my children during their respective lives, I do therefore direct that no portion of said income shall be liable for the payment of any debt or debts contracted by any of my children prior to my decease; that no portion of said income shall ever be liable for any of such debts so contracted prior to my decease.

"IN TESTIMONY WHEREOF, I have hereunto set my hand, at Middletown, Ohio, this eighteenth day of October, in the year of our Lord, One Thousand Nine Hundred and Fourteen.

(Signed) Louis Sebald"

The testator left surviving him, four (4) children; Elsie Sebald, Carrie Hinkle, Harry Sebald and Water Sebald. On December 9, 1914, there was filed in the office of the County Recorder of Butler County, Ohio, "Certificate to Recorder, Real Estate Devised by Will." This Certificate was filed in the Probate Court, of this County, on April 3, 1915, and describes that real estate contained in Item Fifth of the Will of Louis Sebald.

In the Inventory and Appraisement of the testator's estate, listed one (1) share of stock of the Cincinnati and Dayton Railway Company, One Hundred ($100.00) Dollars par value, and three (3) shares of Western Land and Irrigation Company stock, One Thousand ($1,000.00) Dollars par value each, as of no value. The household goods were not appraised. Under Schedule "E," there is shown a deposit in the Merchants National Bank, in the amount of One Thousand-Five Hundred-Fifty Dollars and Forty Seven Cents ($1,550.47), and under Schedule "G," accounts receivable in the amount of Three Hundred Nineteen Dollars and Fifty Cents ($319.50). There was no appraisal and no description of the Real Estate owned by the testator at the time of his death. Total assets were computed to have been One Thousand-Eight Hundred-Sixty Nine Dollars and Ninety Seven Cents ($1,869.97). Three (3) Accounts were filed by Elsie Sebald, beginning March 3, 1916, and ending July 8, 1918, which after careful examination by this Court, appears to be a combination Executor and Trustee report. The Third Account includes the sum of One Thousand ($1,000.00) Dollars as part payment for lots on Crawford Street. This item indicates to this Court that all the assets to be distributed under Item Sixth of the Will, had not yet been received, nor totally disbursed. Said Third Account, filed July 8, 1918, although signed by Elsie Sebald as Trustee, does contain assets with which she and Carrie Hinkle were chargeable with in the estate as Executrixes, and such Account shows a balance of One Hundred-Eleven Dollars and Eighty Three Cents ($111.83) undisbursed.

There have been no further Accounts filed, either by the Executrixes or by the Trustee. No exceptions were ever filed, and the Court had duly approved them. The Third Account shows a distribution to Harry Sebald as his particular share of the rents under the Trust. One of the allegations of the Petition, is that Walter Sebald, is deceased, leaving no

children surviving him. There was testimony that he did die in the State of California, but there was no testimony whatever as to his marital status; whether he had died testate or intestate, nor the exact date of his death.

Harry Sebald died leaving the following issue known to have survived him, to wit: Doris Harter, Dick Sebald, Harry Sebald, Louis Sebald, Paul R. Sebald, Vada D. Skotnicky and Katherine Sebald Smith who died in 1937, leaving three (3) children, Herbert J. Smith, Robert W. Smith and William W. Smith.

After the death of Walter Sebald, the Trustee divided the rents and profits in three (3) proportions; one-third to Harry Sebald, one-third to Carrie Hinkle and one-third to Elsie Sebald.

After the death of Harry Sebald the rents and profits accruing under the Trust were then divided; one-third to the seven (7) children of Harry Sebald, one-third to Carrie Hinkle and one-third to Elsie Sebald. Upon the death of Katherine Sebald Smith, one of the children of Harry Sebald, the remaining six (6) children of Harry Sebald, then received one-sixth of the one-third share that was apportioned to their father Harry Sebald during his lifetime. Herbert J. Smith, Robert W. Smith and William W. Smith, the children of Katherine Sebald Smith, who died in 1934, received that portion which their mother received during the year 1937.

The testator left a piece of improved real estate located at 301 Crawford Street, which was not described, nor included specifically, in the Testamentary Trust.

The Trustee had included this particular real estate in the Trust Estate from the time of her appointment as Trustee to the date of her death May 29, 1956, and had disbursed the profits from the rentals thereon, along with the other moneys derived from the real estate she held and managed as Trustee.

Elsie Sebald had married Shelby J. Anderson, and her estate was duly administered in the Probate Court of Butler County, Ohio, under the name of Elsie S. Anderson a/k/a Doris E. Anderson, and listed her husband Shelby J. Anderson as the surviving spouse, and the only person entitled to inherit from said decedent, under the statute of Descent and Distribution, if said decedent died intestate. Elsie Sebald Anderson did leave a Last Will and Testament, which was properly admitted to probate, and in said Will, after providing for the debts and costs of administration of the estate, did give, devise and bequeath all the rest and residue of said estate, both real and personal, absolutely and in fee simple, to her husband Shelby J. Anderson. A First and Final Account in said estate was filed December 10, 1956, and subsequently approved and the estate closed.

Carrie Hinkle is the sole survivor of the four (4) children of Louis Sebald, deceased.

The Plaintiff, being in doubt as to the provisions of said Will, and his duties thereunder, asks the Court's determination of the following questions:

1. Is the real estate (improved) located at 301 Crawford Street, properly included as an asset of the Trust?

2. If it is not so included, then what disposition should be made of the real estate, and what steps should the Trustee take with regard to the income received from said property, since the death of Louis Sebald in 1914?

3. What persons constitute the present beneficiaries of said Trust, and in what proportion are they entitled to receive the net income of the Trust, as provided in the Testator's Will?

4. If the children of Katherine Sebald Smith are entitled in said Trust, should the Trustee pay to them from the income of the Trust, the entire amounts to which they would have been entitled, and if so, are they entitled to interest on such unpaid amounts?

5. If the Court found that the children of Katherine Sebald Smith are entitled to such payments, then in what priority are such arrearages to be paid?

By way of answer, Louis Sebald, son of Harry Hebald, who was a son of the testator, asserts that the real estate (improved) located at 301 Crawford Street, is properly included as an asset of the Trust. That in the event the Court would hold that it was not considered such an asset of the Trust, then it would pass though the residuary clause of the original Will. Further, that Carrie Hinkle is entitled to one-fourth of the income, and that the surviving children of Harry Sebald being Doris Harter, Dick Sebald, Harry Sebald, Louis Sebald and Paul R. Sebald and Vada D. Skotnicky are entitled to one-quarter of the Trust income. That the other one-half of the income, not being provided for in the Trust, should be held by the Trustee, to be distributed under Item Fifth (C), upon the death of the last of the original four (4) children of Louis Sebald.

The answer of William W. Smith, Robert W. Smith and Herbert J. Smith, children of Katherine Sebald Smith, deceased, alleged that they had received their mother's distributive share through the Calendar Year 1937. but have received nothing since that time, and claim full entitlement to their distributive share by virtue of Item Fifth of the Last Will and Testament of the deceased testator. These defendants contend that they are entitled to a per stirpes share in the Trust and that they are entitled to a full legal interest on the amounts due them under the terms of the Trust; that they are also entitled to first priority of payments after the debts of said Trust are paid.

Does the wording in Item Fifth of the Will, create a Trust in the improved real estate located on Crawford Street, in Middletown, Ohio? Are they sufficient as precatory words, to show a clear. intention of the testator. to have such parcel of real estate included in the Trust? This Court has searched at great length for a judicial determination of a similar factual situation. It could find none.

The authorities are in agreement that the words cannot be implied from the words of the instrument, where express terms are unambiguous. (Citing Broadway Building Company v. Salafice, et ux, 45 A. L. R. 847.)

The testator, Louis Sebald, using the words "all of my improved real

estate," and then proceeding to describe the location of said real estate, designates particularly, that real estate to be controlled by the Trust. The testator, in Item Sixth directs that all the residue of his estate be given, devised and bequeathed to his four (4) children. This Court, in attempting to understand the intentions of the testator, must recognize the fact that he had previously, in his Will, provided for the disposition of all unimproved real estate, and by the Testamentary Trust, that improved real estate which he described. Why then would the testator use the word "Devise" in Item Sixth, if he had already made disposition, in his Will, of all the real estate, improved and unimproved.

The testator is presumed to know the meaning of the words used, and he is presumed to know the law which would govern the use of such words.

Therefore, it is the opinion of this Court, that the Crawford Street property was not intended to be included in the Testamentary Trust, and passed to the four (4) children, Elsie Sebald, Carrie Hinkle, Harry Sebald and Walter Sebald, in equal proportions, under Item Sixth of his Will.

The Trust property was transferred to the Trustee, Elsie Sebald, by virtue of a "Certificate to Recorder," which merely set forth therein, Item Fifth of the Will. As will be noted, it did not contain a description of the improved real estate on Crawford Street.

It follows, that since title to the Crawford Street property, never vested in Elsie Sebald, Trustee, the successor Trustee can make no disposition of it; and that a Trustee, in the management and the collection of rents from the Crawford Street property, acted only in the capacity of an agent for the owners of that real estate.

The question raised as to what steps the successor Trustee should take, with regard to the income received from the Crawford Street property, and the income from the Trust, since the death of Louis Sebald in October of 1914, poses a difficult and serious problem.

From the date of the death of the testator, the Trustee made distribution to the testator's four (4) children. No Court action was ever instituted from the beginning of the Trust. There was no question of the validity of the Trustee's action and conduct; it is presumed that the Trustee made correct accountings as to the management, collection and disbursement of the moneys received by her. The children of the testator accepted their share of the rents and profits from the Trust, which included the rents from the Crawford Street property, and they acquiesced in the conduct of Elsie Sebald.

In 1934, Katherine Sebald Smith died intestate. Her three (3) minor children received, through their father as natural guardian, the share that their mother would have been entitled to. This arrangement was carried on until 1938. Walter Sebald died in California in 1937. Testimony concerning income tax records of the Trustee was that Walter Sebald had received his one-fourth distributive share until his death. There is no testimony or evidence to the effect that Walter Sebald died leaving a child or children. No such claim has been asserted.

· From January 1938, to May 29, 1956, the date of the death of Elsie Sebald Anderson, the income was divided in the following manner: one-third to Elsie Sebald, one-third to Carrie Hinkle and one-third to the living children of Harry Sebald. No payments were made to the children of Katherine Sebald Smith.

As to the determination of the question as to whether or not the children of Katherine Sebald Smith were, and are, entitled to that share of the income of the Trust and from the Crawford Street property, it is again one of determining the intention of the testator. It is obvious that he did desire to preserve the Trust Estate for his children, and for any child or children of deceased child or children.

The question has been raised, that because of the terms of the Will, if a son or daughter would die, without leaving children, then that share which the deceased children would have been entitled to during life, should be held to be distributed under Item Fifth (C) upon the death of the last of the original four (4) children of Louis Sebald.

The Court is of the opinion that this contention is untenable since the testator has definitely shown that he wanted, and does want, the income of the Trust property distributed, and that the Trust created primarily for the protection and benefit of his four (4) children, did not cease to be a benefit to any child or children of any deceased child of the testator. That the only reasonable and proper effect of his intention, would be that not only his children's children, but also his great grandchildren share proportionately from the Trust.

The Court, in arriving at this conclusion, lays great stress upon the provisions of Item Fifth, Paragraph (C), wherein it provides for the distribution of the real estate upon the death of the surviving children of the testator. Certainly, the testator is presumed to recognize the fact that there would be monies in the hands of a Trustee, for distribution along with the real estate, upon the death of his last surviving child. He is then directing that the "child or children of my children, or their legal representatives" shall receive the undisbursed income and profits from the Trust. There is no reason that the testator would intend that any sums of money which would be going to his children during their life, and to their children upon death, should be held by the Trustee and allowed to accumulate and finally distributed when the Trust is terminated. It is equally clear to this Court that the testator, since he directed the children of Katherine Sebald Smith, or their legal representatives, to receive their mother's share upon the termination of the estate should also receive her share to which she would have been entitled prior to the termination of the Trust.

The Court cites, as some of the authorities to substantiate its contention that the true intention of the testator that the children of Katherine Sebald Smith be recognized as beneficiaries under the trust: Estate of Hunt, American State Reports 19, page 640

Wills:—Bequests to children does not include grandchildren or issue generally, except from necessity, which occurs when the Will would remain inoperative unless the sense of the word "children" is extended

beyond its natural import, or where the testator has clearly shown by other words that he did not intend to use the word "children" in its proper, actual meaning, but in a more extensive sense.

In the case of Cummings v. Plummer, 48 American Reports, page 167

The Court held that "a direction in a Will to distribute among the testator's children and grandchildren does not include great grandchildren," presents a different situation and expression of law, which this Court does not believe to be applicable. There, the estate was to be converted into cash and the executor to make distribution between the children living and the children of his deceased children, if living at the time. A deceased child of the testator had a deceased child leaving great grandchildren of the testator. In that case the Court said that the language used in the Will clearly indicated an intention or desire on the part of the testator to exclude the great grandchildren from participating in the distribution of his estate, as the Will directs the executor, after conversion of the real estate into money, to make distribution thereof, among the testator's children, living "and the children of his children if living at the time." By such provision it is apparent that the testator intended to confine the distribution of his estate, as to the children of his deceased children, to those of them who might be living at the time of making distribution.

Scott, Guardian v. Nelson, Executor, 29 American Decisions 266

Will, Intention of Testator Governs Construction of. A technical signification of words must yield to testator's intent as benefits from whole will.

Children.—This word when used in a Will, does not ordinarily include grandchildren; but grandchildren and great grandchildren may take under this word, if necessary, to accomplish the testator's intentions.

Instructions were requested that if the Court found the children of Katherine Sebald Smith, entitled to their deceased mother's share, then should interest be allowed on the unpaid money and should the Court recognize a priority on their claim against any distribution to other beneficiaries. In answering, the Court must recognize that these children were minors of tender years when their mother died and had no opportunity to present any defense or assert any claim until after reaching the age of majority. True, years have elapsed since that time, but the Court feels that there was also a legal burden upon those who accepted the benefits of the Trust, and who could have availed themselves of the advise and instructions of a Court of competent jurisdiction, as to whether or not the proportions that they were receiving were legally justified.

Thus, the Court is of the opinion that no rights have been lost by the children of Katherine Sebald Smith in asserting their claim at this late date. That the shares of which they are entitled to be paid to them by the Trustee, together with interest, at the legal rate, from the time each payment is due thereon, and that such payments of income and interest, be paid out of the Trust income now in the possession of the Trustee, and can be considered as payment having a priority in the distribution to all beneficiaries.

In conclusion, it is the opinion of the Court that the persons who constitute the present beneficiaries of said Trust and the proportions under which each is entitled to share in the Trust income are as follows:

| Beneficiary | Proportion |
| --- | --- |
| Carrie Hinkle, daughter of testator | ½ |

Living children of Harry Sebald deceased, son of the testator, being:

| | |
| --- | --- |
| Doris Harter | 1/7 of ½ |
| Louis Sebald | 1/7 of ½ |
| Harry Sebald | 1/7 of ½ |
| Dick Sebald | 1/7 of ½ |
| Paul R. Sebald | 1/7 of ½ |
| Vada D. Skotnicky | 1/7 of ½ |

The three (3) children of Katherine Sebald Smith, deceased, daughter of Harry Hebald, deceased (who was a son of the testator) being:

| | |
| --- | --- |
| Herbert J. Smith | 1/3 of 1/7 of ½ |
| William W. Smith | 1/3 of 1/7 of ½ |
| Robert W. Smith | 1/3 of 1/7 of ½ |

An entry may be drawn in accordance with this opinion.